## FIRST STATE BANK OF SEMINOLE et al. v. DILLARD.
## No. 4214.

Court of Civil Appeals of Texas. Amarillo.
April 23, 1934.

See, also, 42 S.W.(2d) 648.

L. A. Wicks, of Ralls, for appellants.

W. P. Walker, of Crosbyton, for appellee.

HALL, Chief Justice.

The appellant bank filed this suit originally in Gaines county. Thereafter the Court of Civil Appeals at El Paso ordered the same transferred to the county court of Crosby county, where the bank filed its first amended original petition, alleging that since the institution of the suit it had closed its doors and become insolvent and was in the hands of the Texas commissioner of banking.

The substance of the cause of action, as alleged, is that about May 7, 1930, while appellant bank was still open and doing business, the appellee, Dillard, deposited various checks with it for collection and credit, together with a deposit made out by defendant's agent which did not contain the names of the towns where the banks on which the several checks were drawn were located. That plaintiff's teller refused to accept the deposit slip in that condition and made out a new one. That the aggregate of the checks offered for deposit was $410.92. That after appellant's teller had made out the deposit slip by direction of defendant's agent, there was deducted therefrom $210.92 in cash and a charge of $2 for exchange was added thereto, which cash was delivered to defendant's agent, leaving the amount actually deposited to defendant's credit on said date, the sum of $198. That when the transaction was completed, appellant's teller inadvertently failed to destroy the deposit slip which had been tendered by defendant's agent, whereupon plaintiff's bookkeeper found the same amongst the other documents of the day's work and erroneously credited the defendant's account with said sum in addition to the $198 with which defendant had been lawfully and properly credited. That thereafter defendant withdrew said sum of $410.92 wrongfully

408

credited to his account and though often requested, has refused to pay plaintiff the same or any part thereof.

Defendant answered specially alleging that the plaintiff had failed to give defendant credit for $500 which defendant had deposited with plaintiff and that after plaintiff had made the alleged error complained of by it in its pleadings, same was offset by the $500 defendant alleged plaintiff owed him. That defendant during the latter part of May, 1930, discovered from records and deposit slips in his possession that plaintiff had failed to give him credit for as much as $500 that he had deposited with the bank. That he endeavored to get an exact record of his deposits but was unable to do so. That he decided he would not be able to establish his claim in the county where plaintiff's bank was located and dismissed the matter.

Plaintiff filed a second supplemental petition consisting of a general demurrer and general denial.

■ The case was submitted to the jury upon two special issues, which, with the answers, are as follows:

(1) "Do you find that the defendant Jno. A. Dillard is indebted to the plaintiff?"

Answer: "No."

(2) "If you answer the above question in the affirmative, then in what amount is said defendant Jno. A. Dillard indebted to the plaintiff?"

Answer: "We, the jurors, find that the defendant Jno. A. Dillard is not indebted to the plaintiff."

Judgment was entered accordingly, denying the appellant a recovery.

By its first proposition the appellant bank insists that because the testimony offered by it is uncontroverted, unequivocal, unimpeached, undenied, and without confusion, the jury may not capriciously reject said testimony and find the issues in the case in favor of the defendant, as was done in this suit.

In our opinion the verdict of the jury is against the great weight of the testimony.

B. B. Curry, appellant's teller, testified that Dillard and his two sons were in the grocery business on May 6, 1930, and prior thereto, and on that day the appellee's son Britton Dillard brought to the bank and presented to him the original deposit slip (which was introduced in evidence) containing only the amounts of the checks then tendered for deposit and did not contain the names of the towns in which were located the banks

on which said checks were drawn aggregating $410.92. He said he declined to accept the deposit slip and prepared another slip (which was introduced in evidence), which gave the names of the towns in which the drawee banks were located. That at that time Britton Dillard received upon said checks $210.92 in cash, which was the total amount of the checks so deposited, leaving $200 and from said sum $2 was deducted by appellant bank as exchange upon the foreign checks and Britton Dillard was given a copy of the slip introduced in evidence, showing the deposit of a balance of $198, for which defendant rightfully received credit. Curry further stated that through oversight he failed to destroy the deposit slip which Britton Dillard had brought in and which he refused to accept and on May 7, 1930, the assistant bookkeeper, in the absence of the regular bookkeeper, erroneously credited the defendant with said slip in addition to the other slip for $198. There was also introduced in evidence defendant's bank statement, showing that on May 7, 1930, he was credited with $410.92 and immediately following that $198.

The appellee, Dillard, testified that he relied on the bank to keep the books reflecting the transactions between himself and the bank. That his store did not purport to keep a correct set of books, but he put down a memorandum of each of his deposits with the bank and of the checks that he paid out and in that way kept up pretty well with how he stood with the bank. That sometimes checks given him for merchandise and which he deposited and which were turned down by drawee banks, would lie in plaintiff's bank for ten to thirty days before he would find out about it on account of unfavorable conditions governing the transportation of the mails from Hobbs, N. M., into Texas. That mail from Seminole would go west by way of Sweetwater, then over to Midland and back up to Hobbs. He further testified that along about the last of May he concluded that the appellant bank had failed to give him credit for something around $500 that they owed him. That he took his memorandum books and checks and went to Lorenzo, Tex., and talked with Fred Weise, cashier of the First State Bank of Lorenzo, and got Weise to go over the memorandum with him and as a result of that interview concluded that the appellant bank owed him about $500. That his records were not sufficient to enable him to demonstrate that to the plaintiff bank and because he would have to sue the plaintiff bank in Gaines county, where it was located, he would not have a chance of recovering

against plaintiff bank and just let it go and finally figured that he did not owe appellant bank anything. He stated that he sent deposits to Seminole from Hobbs by third parties who were passing that way and it was possible that some of those deposits never reached the appellant bank. That the memoranda he kept of such deposits so made and sent to Hobbs by third parties and left by him at a drug store were never checked by him with any statements made by the bank. He admitted that he was frequently in Seminole and could have called at the bank and checked over his account, but "just did not do it." He further testified: "I don't deny that I received $410.92 too much money by reason of the duplicate deposit of May 6, 1930. I just did not know anything about it and have no recollection of it." He testified that his son Britton Dillard had not been subpœnaed as a witness and was not present because it had not occurred to him that Britton Dillard's testimony would be material. The record shows that a great deal of incompetent and immaterial testimony was admitted during the trial.

The officer representing the banking commissioner testified that he was in charge of the bank, that when he took over the affairs and records of the bank he found amongst such records the two original deposit slips and the defendant's bank statement (referred to above as Exhibits 1, 2, and 3). It is provided by the Act of the 40th Legislature, Reg. Sess. p. 290, c. 203 (Vernon's Ann. Civ. St. art. 3737a), that whenever an insolvent state bank shall come into the hands of the banking commissioner for liquidation, the books, records, documents, and papers of such failed bank received by the commissioner and held by him in the course of liquidation, or certified copies thereof under the hand and official seal of the commissioner, shall be received in evidence in all cases without proof of the correctness of the same and without other proof except the certificate of the commissioner and that same were received from the custody of the failed bank or found among its effects. That such original books, records, documents, and papers or certified copies thereof, or any part thereof, when received in evidence, shall be prima facie evidence of the facts disclosed thereby.

■ But these instruments must be considered in connection with the testimony of Curry, the teller. As stated, he testified that when the seven checks were brought in by Britton Dillard, the latter had listed them on a deposit slip without giving the names of the several banks in other places upon which the various checks were drawn and that he made out a new slip, naming the drawee banks. The two original slips were introduced in evidence. Each of them contained seven different items, the amount of each item stated as follows: $2; $83.14; $85.85; $63; $88; and $88.93, totalling $410.92. The bank statement shows that he was credited the next day in accordance with Curry's explanation and statement of the transaction. It was shown that Dillard was conducting a grocery business at Hobbs, and it is inconceivable that a groceryman would receive and deposit upon the same day fourteen checks given him by his numerous customers, seven of them being drawn for the identical amounts shown upon the other seven. It seems to us that such a coincidence is so highly improbable that it tends to corroborate Curry's testimony and is a circumstance which the jury probably did not consider. Austin v. Neiman (Tex.Com.App.) 14 S.W.(2d) 794. Even if appellee, Dillard, had testified that he received seven checks from as many customers on May 15, 1930, for different amounts and deposited them in the bank and on the same day received seven other checks and deposited them also and that one check in each series corresponded in amount with one of the checks in the other series, we would have to reject the testimony as improbable under the rule that where the evidence is conflicting, the extreme improbability of the asserted fact must be decisive of the controversy. Brewer v. Wilson, 17 N. J. Eq. 180; Hawkins v. Sauby, 48 Minn. 69, 50 N. W. 1015; Gordon v. Ashley, 191 N. Y. 186, 83 N. E. 686; El Paso Foundry & Machine Co. v. De Guereque, 46 Tex. Civ. App. 86, 101 S. W. 814; 14 Ency. of Ev. 127. The rule is that evidence, even though uncontradicted, need not be accepted as proof of a fact when it is contrary to all reasonable probabilities of the case. Daggers v. Van Dyck, 37 N. J. Eq. 130; New Jersey Zinc & Iron Co. v. Morris Canal & Banking Co., 44 N. J. Eq. 398, 15 A. 227, 1 L. R. A. 133; U. S. v. Post (D. C.) 128 F. 950, 953; Cleveland Target Co. v. Empire Target Co. (C. C.) 97 F. 44; Ex parte Thistlewood, 33 How. St. Tr. 876.

■ Britton Dillard was not summoned and did not appear to give his version of the transaction and his father's excuse for not having had him subpœnaed was that he did not think his testimony was material. We think it was, and when a party fails to produce a witness whose testimony would probably throw much light upon a transaction and the witness is not produced, a presumption arises that such

testimony would be adverse to the party and this presumption is stronger where the witness is related to the party. Western Shoe Co. v. Amarillo National Bank (Tex. Civ. App.) 42 S.W.(2d) 469.

In this connection we call attention to the fact that no witness, not even the defendant, denied the testimony of Curry nor was any effort made to impeach him, other than by the introduction of a letter which he had written to the appellee, Dillard, on September 25th, more than four months after the transaction in the bank with Britton Dillard. In his oral testimony Curry said that Britton Dillard made the deposit of the seven checks. In his letter he said "Some of your men" brought in the checks, but he further states, both in the letter and upon the stand, that the checks were listed as to amounts on a deposit slip which did not describe any of the checks and that he made a copy of that list and marked it No. 1. He further explains that he waited at the window and relisted the checks, giving their origin and the town where the bank was located, and totaled the checks, making $410.92. He further explains the transaction with reference to $210.92 in cash being taken and the subtraction of $2 as exchange and crediting Dillard's account with $198. He also inclosed to Dillard copies of both of the deposit slips. These are the principal facts in issue. The identity of the party making the deposit was a collateral matter. He further states in the letter, "This has only recently been called to our attention. In fact, only yesterday." He stated in his testimony that he had talked to Britton Dillard about it in July. This is also an immaterial matter and the discrepancy between the letter and his oral testimony, being with reference to unimportant matters, is given too much emphasis in the brief of appellee and we assume from that the same position was taken before the jury.

The contention by Dillard that the appellant bank owed him something around $500 was not submitted to the jury. We are not informed why the court failed to submit it, but assume that it was because the evidence was insufficient. However, we do not know what effect it had upon the jury.

We think the court erroneously submitted the case to the jury in that the first inquiry is whether Dillard was indebted to the plaintiff. In answering this issue in the negative, it is probable that the jury considered Dillard's contention with reference to the $500 and offset his supposed claim against that of the bank and this seems to be indicated by the jury's answer to the second interrogatory. The first issue, as submitted, was erroneous because it submitted a mixed question of law and fact. Hickory Jones Co. v. Mettauer (Tex. Civ. App.) 208 S. W. 745; Watson v. Patrick (Tex. Civ. App.) 174 S. W. 632. The ultimate issue of fact to be determined was whether Dillard had been credited with $410.92 twice when he was entitled to only one credit for that amount. An affirmative response to that issue would have entitled the bank, as a matter of law, to recover against Dillard.

As said in Speer's Law of Special Issues, § 39:

"An issue may be an ultimate issue in the case and yet not be one for submission to the jury. * * * The word ultimate in this case is not to be given its absolute meaning—that is, an issue which within itself is decisive of the entire case—but rather it signifies either such an issue as within itself is sufficient and final for the disposition or one which in connection with other issues will serve such end."

The judgment is reversed and the cause remanded.