SEBASTIAN MIKULICH, SEBASTIAN MIKULICH, DOING BUSINESS AS LAS VEGAS–TONOPAH–RENO STAGE LINE, DAVID LEE McCONAGHY, DEFENDANTS AND APPELLANTS, *v.* MARY ANN C A R N E R, PLAINTIFF AND RESPONDENT, AND DEWANE BAKER, DEFENDANT AND RESPONDENT.

No. 3640

February 13, 1952.                    240. P.2d 873.

See also 68 Nev. 161.

*Clarence Sundean* and *Leo A. McNamee,* both of Las Vegas, for Defendants and Appellants.

*Morse and Graves,* of Las Vegas, for Plaintiff and Respondent.

*Bryan and Cory, Edwin J. Dotson,* of Las Vegas, for Defendant and Respondent.

## OPINION

By the Court, BADT, C. J.:

Respondent Mary Ann Carner was seriously injured while a passenger on a bus owned by appellant Sebastian Mikulich, doing business as Las Vegas-Tonopah-Reno Stage Line, and operated by appellant David Lee McConaghy. The injury occurred through a collision of the bus with a truck and semitrailer owned and operated by Dewane Baker. Baker was a defendant in the action, but no verdict was returned or judgment rendered against him. He is accordingly named herein as a respondent. The parties will be referred to as they appeared in the court below or by their names. Forest Elaine Purdy, who was also a passenger in the bus, was fatally injured in the same accident. An action

brought by her father was tried jointly with the present action and is embraced in the transcript before us, but is not involved in the present appeal. The plaintiff based her right to recovery on the alleged joint, concurrent and simultaneous negligence of all of the defendants. The status of the plaintiff as a passenger on the bus and the operation of the bus by the defendant bus driver and the defendant bus company as a common carrier and the ownership and operation of the truck and semitrailer by Baker are admitted by the pleadings. The pertinent facts are as follows:

The bus was on a scheduled trip from Las Vegas to Reno, and was carrying 19 passengers. At about 9:20 p. m., on August 10, 1947, on Highway 95, approximately four and one-half miles south of Beatty, the bus driven by McConaghy was proceeding north and the truck, or tractor-truck, and semitrailer was being driven south by Baker. The trailer was loaded with about 11 tons of pumice. When the respective drivers each noticed the approaching lights of the other vehicle, the north bound bus was entering into a wide gradual curve bearing easterly, that is to say, to the bus driver's right, and the south bound truck and trailer were on what is referred to as a straightaway, north of this curve. At this point the two vehicles were approximately 1,000 to 1,200 feet apart (according to Baker) or 1,800 feet apart (according to McConaghy). The truck was traveling about 35 miles an hour and the bus about 50 miles an hour. As the two vehicles approached each other and when they were at a distance of approximately 400 feet apart, both drivers almost simultaneously operated their light switches to bring their lights from "high beam" to "low beam." The bus's headlights went to low beam, but the bus driver testifies that the truck lights changed to a single bright light. This was corroborated by a subsequent test of the truck's lights. The bus driver further testifies that, confronted with such single bright light and being unable to determine what it was or what its

position on the vehicle was or what kind of vehicle was approaching him, he switched back to high beam to see the side of the road and to see what was behind the single bright light; that he did this for the protection of his passengers; that he then ascertained for the first time that the vehicle was a truck, that it was in part on his side of the road and was headed at a slight angle toward his bus. He further testified that at that point the two vehicles were about 100 to 125 feet apart (Baker says about 400 feet, later estimated it at 300 feet) when he switched his lights back to high beam, and that after switching to high beam and identifying the approaching vehicle as a truck and seeing its position on the road, he applied his brakes, reducing his speed by one half or two thirds, and drove to the right side of the highway until his right wheels were on the gravel shoulder.

Although there is some conflict, it is pretty clearly established that the truck was encroaching to some extent on the bus's lane. The tractor-truck, which was only six feet wide, cleared the bus, but the forward left corner of the trailer, which was eight feet wide, struck the forward end of the left side of the bus and ripped parts of it away along virtually its entire length. The bus's width was eight feet. Under a stipulated formula as to the number of feet a vehicle would travel under a given speed in miles per hour, it would appear that from approximately one to three seconds elapsed from the return of the bus's lights to high beam to the moment of impact.

Some 20 witnesses testified, the case took some 13 days to try and the transcript of the testimony embraces 820 pages. Many photographs of the vehicles and of the highway were received in evidence. We need, however, recite only so much of the evidence as is necessary to the point determined in this opinion. The drivers of the two vehicles were the only eyewitnesses to the collision.

Dewane Baker, the truck driver and one of the defendants, was called by the plaintiff as an adverse witness.

He testified in detail as to the size, measurements, capacity, etc., of his truck and trailer; as to all of his activities on the day of the accident; the times of the day involved; the nature of the headlights, taillights and clearance lights on his vehicles; his trip south with his load preceding the accident; the place of the accident in miles from Beatty; the speed of his own truck and estimated speed of the bus; the condition of the dividing line down the center, the nature of the highway with respect to being straight or curved; the distance from him of the bus lights when first observed; the movement of the bus's lights across his windshield as the bus came around the turn; the dimming of the bus lights and the dimming of his own truck lights; the fact that the witness switched his lights back to high and then to low again; the position of his own truck and the position of the bus on the highway ("I could determine where [the bus] was on the highway * * * until he brightened his lights the last time and left them on * * * We were both in normal position * * * on our right sides of the road.") ; that he applied his brakes and was engaged in staying where he belonged; that, as a description of the collision, there was "just a loud crash and we were past, we were separated"; that the left front corner of his trailer hit the bus. He then described bringing his truck and trailer to a stop and what was done thereafter. He was unable to testify of his own knowledge as to where his truck and trailer were at the moment of the impact on the highway. He was then asked: "From the time that the bus driver put his lights back on bright to the time of the impact were you or were you not—were you blinded by those lights?" And he answered, "I absolutely was." He then stated that after he was blinded by the bus lights he looked "at the right side of the road alternately and back at the bus to keep him in location, but I was blinded so bad that I couldn't determine his location." He testified that he did not know whether he attempted in any

way to veer his vehicle to the right of the highway nor could he say what the bus driver did because he, Baker, was blinded.

All of the foregoing testimony was given without objection. The following then took place:

"Q. Mr. Baker, do you have any opinion, please answer this question yes or no, as to what caused that accident, that collision? A. Yes.

"By Mr. Sundean: Object on the ground it is calling for a conclusion. It is a matter entirely in the province of the jury.

"By the Court: Objection sustained.

"By Mr. Graves: Q. Do you know what caused the accident, Mr. Baker?

"By the Court: He can answer it yes or no, if he knows what caused the accident.

"A. Yes.

"By Mr. Graves: Q. Please state.

"By Mr. McBain: I object, Your Honor, calling for a conclusion of law, invading the province of the jury.

"By the Court: That objection is overruled. He says he knows what caused it.

"By Mr. Graves: Q. What caused it? A. Bright lights.

"By Mr. Sundean: I will move to strike that answer on the ground it is incompetent, irrelevant and immaterial.

"By the Court: It may stand.

"By Mr. Graves: Q. Now, you said bright lights. What do you mean 'bright lights'? A. Bright lights on the part of the bus."

Appellants assign the admission of this testimony, over their objection, as error, and we are forced to the conclusion that it was error to overrule the objection above recited.

The general rule that a witness must testify to the evidentiary facts and not to his conclusion, opinions or

inferences has been so long and so well recognized by this and all other courts in this country as not to require discussion. To this general rule however, there are certain exceptions. The well recognized exception with reference to expert testimony is not here involved.

It is first insisted that Baker's statement that the bright lights on the bus caused the accident was what is often termed a shorthand statement of the facts, but it is clear that this statement does not come within such category. See concurring opinion in State v. Teeter, 65 Nev. 584, 649, 200 P.2d 657. The witness's statement that he was "blinded" by the bus's lights furnishes a more accurate illustration of a conclusion which is a shorthand statement of the facts.

It is next insisted by respondent that the testimony of Baker that the bus's bright lights caused the accident comes within the exception to the general rule, under which a witness may testify to such conclusion when the condition of things is such that they cannot otherwise be reproduced and made palpable to the jury. For a statement of this rule she cites Atchison, T. & S. F. R. Co. v. Miller, 39 Kan. 419, 18 P. 486. It is often stated that this exception is recognized when the facts are such that they cannot be so detailed to the jury as to place them in the same position as the witness so that as a matter of necessity and because it is the best evidence available, the witness is permitted to state a conclusion.

A case note in L.R.A.1915A, following the case of Cumberland Tel. & Tel. Co. v. Peacher Mill Co., 129 Tenn. 374, 164 S.W. 1145, L.R.A.1915A, 1045, at page 1053 of the annotation, is devoted to the admissibility of testimony of nonexpert witnesses as to cause.

The first situation develops where expert or special knowledge is essential to the formation of an intelligent opinion which would be of aid to the jury. In such case

a nonexpert witness cannot express his opinion as to the cause of a particular accident. This rule was followed in cases[1] involving the following: cause of overturning of railroad car; cause of flashes attending blowing out of a fuse box on an electric car; cause of breaking glass; cause of going out or flowing away of dock; cause of fall of building; cause of breaking of railroad rail; cause of breaking of pulley; cause of cave-in of roof of mine; cause of breaking of pane of glass.

Such testimony was also held inadmissible where the witness had no special scientific, professional or peculiar knowledge of the subject matter, and the facts could be so fully described that the jury could form an intelligent opinion as well as the witness, such as: cause of overflowing of river, defective track as cause of train wreck; defect in highway as cause of accident; defect in construction of sidewalk as cause of breaking of flagstones; pile of lumber as cause of fright of horses; obstruction of stream by piers as cause of flooding; cause of burning of goods during transportation; railroad embankment as cause of overflow; cause of fire along railroad right of way; filling around bridge abuttments as cause of overflow.

Such testimony was also held inadmissible upon the grounds that the question of causation is one which can be and is to be answered by the jury from the facts as given by the witnesses, as: fire caused by spark from locomotive, or by heating of internal steam pipe; deficient light as cause of hammer handle catching in revolving screw to plaintiff's injury.

The last instance bears a close analogy to the present case—in which Baker testified that the bright lights on the bus caused the accident. The case last mentioned, however, Hillje v. Hettich, 95 Tex. 321, 67 S.W. 90, 92, involved insufficient light. "He states that the want of light was the cause of the accident; that, if there had

---

[1]The citation of each case involving the illustration given appears in the case note.

been more light, it would not have happened, etc. But this is merely his opinion, not admissible upon the point, which must be decided from the facts of the occurrence as he states them." As with Baker's testimony, here the plaintiff himself testifies to cause. Baker testified that the bright lights in the bus caused the accident. Hettich testified that the lack of light caused the accident. Baker's theory is that it was negligence for the bus driver to have had his bright lights on. Hettich's theory is that it was negligence for his employer to furnish insufficient light. Hettich, like Baker, testified to all of the facts and surroundings in connection with the accident. There is little if any distinction between bright lights causing the accident in the one case and insufficient lights causing the accident in the other.

Nonexpert testimony of cause was likewise held inadmissible in a series of cases where the witness had testified fully to the facts. In other cases the opinions were simply excluded as mere conclusions.

On the other hand, a group of cases is listed where the witness was particularly acquainted with the matter, *and* the subject matter was such as could not be fully reproduced and made intelligible to the jury except by an expression of opinion in interpretation of the impression made on the mind of the witness, such as: cause of fright of horses; cause of bar forming in stream; debris deposited in creek as cause of flooding adjacent land; settling of earth as cause of hole near telephone pole; cause of towed boat coming into contact with bridge instead of passing through draw; cause of injury to cotton; dam in stream as cause of injury to mill; condition of ties and spreading rails as cause of derailment; fall from running board of street car caused by slipping. The theory of these cases is particularly described in Hand v. Catawba Power Co., 90 S.C. 267, 73 S.E. 187, admitting the evidence when the matter "cannot be reproduced or clearly described to the jury." The principal difficulty, said the court, was in the application

of the rule, whether the matter could be adequately portrayed to the jury. In that case it was said that it would have been "impossible for the witnesses to reproduce before the jury in detail the almost innumerable facts and circumstances which had occurred within their experience and observation, running through many years, and upon which their opinions were based."

Such testimony was admitted in a group of cases where the opinion "would be more satisfactory to the triers than those of scientific men, who were personally unacquainted with the facts, and where to preclude them would be to close a wide and important avenue to the truth." These cases included a railroad bridge across stream as cause of flooding; a railroad as an obstruction causing change in flow of river; railroad embankment as cause of overflow of stream. Referring to the case note above discussed and to other cases, the writer of the text in 20 Am.Jur. 688, Evidence, sec. 818, has recited what we believe to be the correct rule, namely, that the opinion of a nonexpert as to the cause of a particular accident is not admissible where the facts can be so fully and sufficiently described that the jury can form an intelligent opinion as well as the witness.

The ruling of the court on a similar objection to the testimony of another witness is, we think, of some significance. Truck driver Spears, who was following truck driver Baker, was asked whether he had an opinion, from his observation of the highway that evening (he had stopped his truck opposite the bus immediately after the collision, talked to McConaghy, examined the bus, etc.) as to where the point of impact was. Upon the objection that this called for a conclusion of law and was an invasion of the province of the jury, the court said: "Objection sustained. You can get the facts from this man and let the jury determine where it was. I think it invades the province of the jury. Objection sustained." Apparently the ruling would have been the

same if the witness had been asked if, from his examination of the premises, he knew where the point of impact was. Assuming the correctness of this ruling (see Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635, on the precise point), it would seem that, a fortiori, the question put to Baker as to the "cause of the accident" called for a similar ruling.

We have gone to some pains in reciting at length the testimony as given by the witness with reference to the actual facts and conditions as observed by him. These facts and conditions were described in such detail as to make the situation as intelligible in the minds of the jury as it was in the mind of the witness—even to the extent of the witness's testimony that he was blinded by the bus's lights. Respondent herself insists that "All the facts leading up to the point of the conclusion of the witness Baker were in evidence." The action of the court in permitting him to testify further that such bright lights were the cause of the accident is contrary to the overwhelming weight of authority. Grace v. Union Electric Co., 239 Mo.App. 1210, 200 S.W.2d 364. Respondent concedes this rule as applying in eastern jurisdictions, but feels that the rule is otherwise in the west. This contention however loses all weight in view of the holding of this court in McLeod v. Miller & Lux, 40 Nev. 447, 153 P. 566, 569, 167 P. 27. In that case several witnesses were permitted to testify that the downstream dam of the defendants caused the overflow of Walker River upon the land of the plaintiff, and caused the deposit of sand in the river bed and on the lands of the plaintiff above the dam. The identical rule in question and its applicability to the question of causation was there involved. As the prevailing opinion of Mr. Justice COLEMAN put it:

"The question, then, is: Were the facts and circumstances which entered into the forming of an opinion by the witnesses themselves as to what caused the overflows complained of capable of being detailed to the jury?

If they were, the opinion of the various nonexpert witnesses should have been excluded; if they were not, their admission and testimony by the court was not error. It appears from the evidence in this case, which took about five weeks to hear, that various witnesses detailed what transpired along the river as it flows through the property owned by the parties, from a very early day in the history of the valley. The various dams, ditches, cuts, overflows, etc., were minutely detailed to the jury. Besides, the jury were taken to, and personally viewed, the premises in question. Under the condition of the record, it appears to us that the objections to the opinions of the nonexpert witnesses should have been sustained."

On rehearing the prevailing opinion said: "The point most strenuously urged upon the rehearing is that the court took the wrong view of the law upon the question as to the competency of the evidence given by witnesses which was termed 'nonexpert'."

Respondent in that case, as here, relied upon Hand v. Catawba, 90 S.C. 267, 73 S.E. 187, but this court there conceded that the facts in Hand v. Catawba "no doubt justified the ruling of the court," it apparently having been considered impossible in that case for the witness to detail all of the pertinent facts in such manner as to enable the jury to form a conclusion. McCARRAN, J., filed a vigorous dissent and also relied upon Hand v. Catawba, supra. A rehearing was granted and the opinion was again written by COLEMAN, J. There had been a change in the court, and SANDERS, J., wrote a concurring opinion, NORCROSS, J., having written a concurring opinion on the original submission. McCARRAN then C. J., again wrote a dissenting opinion. In the official report the six opinions occupy almost a hundred pages, and we can only say that the question was there put at rest in this state after most careful consideration and reconsideration. If there is any distinction in the facts, the authority is made stronger thereby, because

the facts here as to road conditions, speed, nature of the vehicles, the width of the road and the shoulders, the dividing line, the condition of the lights, etc., were all susceptible of descriptive testimony, while much greater difficulty lay in the description, covering a period of several years, of the river channel, ditches, dams, currents, etc., in McCleod v. Miller & Lux.

It is next contended that even if the admission of the testimony was error, the same was harmless. Again McCleod v. Miller and Lux refutes this view. There SANDERS, J., said in his concurring opinion after reargument:

"I am of the opinion that it was prejudicial error on the part of the trial court to classify a number of witnesses, introduced on the part of respondents, as *experts* when no apparent reason or necessity existed therefor, other than to make it possible for these witnesses to give their opinion and state as an ultimate fact that appellants' dam caused the overflow. This was the primary and ultimate fact to be determined by the jury. It was a close and doubtful question, and in such situation it is not difficult to perceive the influence of such opinions and conclusions upon the mind of a juror called upon to determine a doubtful question."

Here too the question as to the cause of the accident was a close and doubtful one and the influence of Baker's opinion, reinforced by his testimony that he had driven all kinds of trucks from one and one half to 30 ton capacity over that road in the nighttime for long periods of time and that his experience embraced the driving of trucks for over a million miles, may indeed have had a great influence on the minds of the jurors. That influence may well have been increased by the particular circumstances. Over the objection that the witness's conclusion would invade the province of the jury, the court said: "That objection is overruled. He says he knows what caused it." This theory was emphasized in Cumberland Tel. & Tel. Co. v. Peacher Mill Co., 129 Tenn. 374, 164 S.W. 1145, 1147, L.R.A.1915A, 1045, where the

court said: "In this case the jury might well have concluded that the testimony of Prof. Daniel, admitted by the trial judge over objection, imposed on it a peculiar deference to the expert's opinion as to the true cause of the conflagration."

But it is said by respondent that in McCleod v. Miller & Lux and in many of the cases cited in support of the rule discussed, the opinion of the witness was given upon the ultimate conclusion to be drawn by the jury; that the ultimate conclusion to be drawn here was as to whose negligence caused the damage; that there is a great distinction between cause and proximate cause; that the jury might even, though accepting Baker's testimony that the bright lights of the bus caused the accident, have determined that the bus driver under the circumstances was justified in keeping on his bright lights for the protection of his passengers and was accordingly not chargeable with negligence. This however draws too fine a line.

In Twomey v. Swift, 163 Mass. 273, 39 N.E. 1018, 1019, the question asked the witness was as to the cause of the accident. In holding that the question had been properly excluded, the court said that the question "related to the cause of the breaking down of the staging, and was, we think, intended to ask for an opinion as to whose negligence caused the accident." Likewise, in Neisner Bros. v. Schafer, 124 Ohio St. 311, 178 N.E. 269, 270, the plaintiff was permitted over objection to state that an employee in defendant's store had said to plaintiff, "I am sorry, dear, I caused you this injury." In reversing the judgment the court said that "evidence of the character here involved was but the expression of an opinion upon an ultimate issue to be determined by the jury, and therefore inadmissible. The ultimate issue, that of negligence, must be determined by the jury from the testimony detailing facts and circumstances connected with the accident, and not from the opinion or conclusion of the declarant." In Barber v. Anderson, Tex.Civ.App.,

127 S.W.2d 358, 360, the question elicited the answer that the witness had first stated that she thought "the accident was unavoidable." Again the court said that this was "a legal conclusion to be determined by the jury only from the evidence detailed from the witness-stand."

Even if we concede that the cause of the accident is not equivalent to or identical with the final conclusion as to whose negligence caused the accident or the proximate cause thereof, it embraces a great and perhaps a major part thereof. If we forget for a moment the exact derivational meaning of "ultimate" we might even say that the final conclusion of the jury involved several ultimate issues. Such "ultimate issue" might within itself be decisive of the entire case, or might serve such end only in connection with other issues. First State Bank of Seminole v. Dillard, Tex.Civ.App., 71 S.W. 2d 407.

Respondent next insists that even if the admission of Baker's testimony that the bright lights on the bus caused the accident was error, it became nonprejudicial by reason of the court's instructions to the jury. It is true that the jury was instructed that if Baker was negligent and such negligence "was the sole proximate cause of the accident," it should find for appellants. It is also true that the jury was instructed that if the bus driver was suddenly and unexpectedly confronted with the imminent danger and used his lights in the manner appearing to him to be the best thing to do for the protection of his passengers, such as might have been followed by any prudent person charged with the same degree of care under the circumstances (though in violation of statute requiring him to dim within 500 feet), then he did all required of him. It is likewise true that the jury was instructed that they must find in favor of Baker if the bus driver was negligent and such negligence was "the sole and proximate cause of the accident." It is further true that the jury was instructed that regardless of any reaction or effect the bus lights had on Baker they should still find in favor of the bus line

and the bus driver if the latter's use of his lights "was an exercise of utmost care and diligence on the part of that driver for the safety of passengers in said bus" and if the jury found that the bus line and the driver in all other respects complied with the standard of care imposed on them as explained in other instructions.

We do not think that these instructions cured the error. If the jury was permitted to receive and to accept Baker's conclusion as to the cause of the accident, this error was not excused by the mere fact that the jury could then proceed to determine for itself other elements involved. This conclusion is strengthened by the instruction defining proximate cause:

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the injury."

We conclude that the admission over the objection of the defendants of the testimony of the truck driver to the effect that the bright lights on the bus caused the accident was error, and that such error was prejudicial, so that a new trial must be had. We therefore find it unnecessary to pass upon the other assignments of error. The judgment and the order denying appellants' motion for new trial are reversed with costs, and the case is remanded for a new trial.

EATHER and MERRILL, JJ., concur.

ORDER DENYING PETITION FOR REHEARING
May 28, 1952.

*Per Curiam:*

**Rehearing denied.**