234 Cal.App.3d 1609 (1991)
286 Cal. Rptr. 402
RICHARD VISUETA et al., Cross-complainants and Appellants,
v.
GENERAL MOTORS CORPORATION, Cross-defendant and Respondent.
Docket No. B054388.
Court of Appeals of California, Second District, Division Six.
October 10, 1991.
*1611 COUNSEL
Michael P. Ring and Joseph W. Klobas for Cross-complainants and Appellants. *1612 Hill, Genson, Even, Crandall & Wade, Eugene M. Genson and Edwin B. Brown for Cross-defendant and Respondent.
OPINION
YEGAN, J.
Richard Visueta and Michael Bunt appeal from a summary judgment granted in favor of General Motors Corporation (GMC). The trial court found that no triable facts existed as to causation on their cross-complaint for indemnity. We agree.
On October 2, 1986, Bunt was driving Visueta's 1965 Chevrolet flatbed truck which had negligently maintained brakes. Visueta told Bunt to drive the truck to the Santa Barbara County dump and to unload several tons of roofing debris. When Bunt turned from Highway 101 onto E1 Sueno Road, the hydraulic brakes failed. He pumped the brakes and downshifted, but could not make the turn. The truck crossed the double yellow line and struck a car driven by Richard Pilon who died as a result of the collision.
Pilon's heirs filed a wrongful death action against Bunt, Visueta, State of California, and the City and County of Santa Barbara. Bunt and Visueta cross-complained against GMC alleging that the lever to the parking brake was installed in an inaccessible location, making it "impossible to reach during an emergency." (1) (See fn. 1.) This claimed design defect allegedly impaired Bunt's ability to use the parking brake to slow the truck and avoid the collision.[1]
(2) (See fn. 2.) GMC moved for summary judgment claiming that there was no design defect in the placement of the parking brake and that there was no causation between the claimed defect and Pilon's death.[2] As indicated, the motion was granted. Visueta's appeal is without merit. The undisputed facts *1613 demonstrate lack of causation between the claimed design defect and Pilon's death as a matter of law.
(3) Because a summary judgment motion raises only questions of law, we independently review the supporting and opposing papers, "... applying the same three-step analysis required of the trial court. [Citations.] First, we identify the issues framed by the pleadings.... [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor.... [¶] [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" (AARTS Productions, Inc. v. Crocker National Bank (1986) 179 Cal. App.3d 1061, 1064-1065 [225 Cal. Rptr. 203].)
(4a) The California Highway Patrol conducted a postaccident investigation and determined that the hydraulic brakes were improperly maintained and the parking brake was in disrepair and inoperable. The parking brake lever played no part in the accident. At no time did Bunt use or even attempt to use the parking brake.
At his deposition, Bunt conceded that a driver could engage the parking brake by reaching down and pulling the parking brake lever located next to the gear shift. Bunt's declaration in opposition to the motion for summary judgment contradicted his deposition testimony. (5) Admissions or concessions made during the course of discovery govern and control over contrary declarations lodged at a hearing on a motion for summary judgment. (D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 20-22 [112 Cal. Rptr. 786, 520 P.2d 10]; Hoover Community Hotel Development Corp. v. Thomson (1985) 167 Cal. App.3d 1130, 1141-1142 [213 Cal. Rptr. 750]; State Farm Mut. Auto Ins. Co. v. Eastman (1984) 158 Cal. App.3d 562, 573 [204 Cal. Rptr. 827]; Rivera v. Southern Pacific Transportation Co. (1990) 217 Cal. App.3d 294, 299-300 [266 Cal. Rptr. 11].) Even if the trial court assumed the location of the brake lever constituted a design defect, causation was absent here.
(4b) California Highway Patrol Officer John Runjavac was called to the collision scene to inspect the truck brakes. Runjavac had worked 21 years for the California Highway Patrol and spent 5 years as a commercial enforcement officer conducting safety and postaccident inspections. He opined that the parking brake system was in substantial disrepair and the hydraulic brake system had not been properly maintained. Concerning the hydraulic brake system, Runjavac said: "I found that the brake fluid itself in the master cylinder was not as full as it should be. The master cylinder was about half full. Not only that, the brake fluid itself was dirty and there was *1614 a certain amount of sludge in the bottom of the master cylinder which I noted when I pulled the measuring device out. So the top portion of the master cylinder was dirty, but there was a substantial sludge sitting at the bottom."
When the parking brake was engaged it was supposed to mechanically compress a band of brake shoes to stop the drive shaft from turning. Runjavac noticed that the lining to the left brake shoe was "worn very thin" and the right shoe had no lining at all. Runjavac and a fellow officer were able to push the truck on level ground after setting the parking brake. At his deposition Runjavac was asked: "Would you expect it [the parking brake] to have any effect whatsoever insofar as slowing the vehicle?" Runjavac answered: "None whatsoever."
Runjavac's testimony was unrefuted. No evidence was presented that the parking brake had ever been inspected or serviced prior to the accident. (6) (See fn.3.) No evidence was presented that the collision itself produced the "very thin" lining on the left brake shoe or the absence of lining on the right brake shoe.[3]
(4c) Visueta's declaration in opposition to the motion for summary judgment stated: "3. Other factors, including perhaps the collision itself, contributed to the effectiveness of both the emergency brake and the service brakes of the 1965 Chevrolet truck in the accident complained of herein. [¶] 4. Any alleged damage to either the service brake or the emergency brake in the subject 1965 Chevrolet truck could be attributable to several factors other than inadequate maintenance. [¶] 5. If Michael Bunt had been able to reach the emergency brake in the subject 1965 Chevrolet truck during the sequence of events immediately prior to the collision with decedent herein, the truck would have been slowed, if not stopped. Bunt's inability to reach the emergency brake during the incident was the primary cause of the severity of the accident complained of herein, and the death involved. [¶] 6. I personally drove the subject 1965 Chevrolet truck prior to the incident on many occasions, and never had trouble with the brakes. I noticed at that time that the emergency brake was located in an awkward position relative to the position of the driver in the driver's seat."
"Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge...." (Code Civ. Proc., § 437c, subd. (d).) *1615 "Subject to Section 801, the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) Paragraphs three, four and five of Visueta's declaration violate the "personal knowledge" rule and were properly rejected by the trial court on that basis.
Visueta could not defeat the summary judgment motion by speculating that the collision was "... attributable to several factors other than inadequate maintenance." (7) "[T]he opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation. (See Burton v. Security Pacific Nat. Bank (1988) 197 Cal. App.3d 972, 978 [243 Cal. Rptr. 227]; Baron v. Mare (1975) 47 Cal. App.3d 304, 309 [120 Cal. Rptr. 675].)" (Buehler v. Alpha Beta Co. (1990) 224 Cal. App.3d 729, 733 [274 Cal. Rptr. 14].)
In ruling on a motion for summary judgment, "... the court shall consider ... all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c); see also Weiss v. Chevron U.S.A., Inc. (1988) 204 Cal. App.3d 1094, 1098 [251 Cal. Rptr. 727]; Taylor v. Fields (1986) 178 Cal. App.3d 653, 659 [224 Cal. Rptr. 186]; Blackwell v. Phelps Dodge Corp. (1984) 157 Cal. App.3d 372, 379 [203 Cal. Rptr. 706].) "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) (4d) Here, the inference that Visueta claims, that the defects in the parking brake were "perhaps [caused by] the collision itself" is not logically or reasonably drawn from its condition after the collision. Since Bunt never applied the parking brake, the "very thin" left brake shoe was extant before the collision. Brake shoes do not become thinner in a collision when the brake is not utilized. Given this fact, and the uncontradicted fact that the hydraulic brakes failed because of inadequate fluid and sludge in the bottom of the master cylinder, the only logical and reasonable inference to be drawn concerning the absence of the right parking brake lining is that it was missing before the collision. A trial court must utilize common sense when drawing inferences pursuant to Code of Civil Procedure section 437c, subdivision (c). Here the court drew the common sense inference that Visueta simply did not maintain either brake system on his truck.
Appellant's reliance on Campbell v. General Motors Corp., supra, 32 Cal.3d 112 is misplaced. Contrary to appellant's claim, that case is not "remarkably similar" to the instant case. In Campbell our Supreme Court *1616 said: "Unless very unusual circumstances exist, this type of claim [failure to place a guardrail or handrail within the passenger's reach proximately causing injury] presents a factual issue which can only be resolved by the trier of fact." (Id., at p. 120.) The court also said: "Since public transportation is a matter of common experience, no expert testimony was required to enable the jury to reach a decision on ... [ordinary expectations that a guardrail or handrail would be placed in reasonble proximity to the passenger seat]." (Id., at p. 126.)
(8) Even though expert testimony may not be required to show the parking brake lever was installed in an inaccessible location, lay opinion as to the cause of an automobile collision is not admissible. In Mikulich v. Carner (1952) 69 Nev. 50 [240 P.2d 873, 38 A.L.R.2d 1], the Supreme Court of Nevada decided this very issue. There the plaintiff was a passenger in a bus which collided with a truck. Over objection, the truck driver, who did not qualify as an expert witness, was permitted to give a lay opinion as to the cause of the collision. The Nevada Supreme Court determined that the trial court committed reversible error and said "... where expert or special knowledge is essential to formation of an intelligent opinion which would be of aid to the jury.... [a] nonexpert witness cannot express his opinion as to the cause of a particular accident." (240 P.2d at p. 876); see also 1 Witkin, Cal. Evidence (3d ed. 1986) § 468, p. 440.)
As indicated by Mr. Witkin, "[h]ighway patrol officers, garagemen, automobile mechanics and others with similar special experience [i.e., experts] may testify on various matters in issue in automobile accident cases." (1 Witkin, Cal. Evidence, supra, § 500, p. 472.) Even though he owned and had driven the truck, Visueta was not an expert on automobile accident reconstruction. He could not give a lay opinion as to the cause of the collision.
(9) Where, as here, there is no triable material fact on the issue of causation, it is a question of law properly determined on a motion for summary judgment. (Lopez v. McDonald's Corp. (1987) 193 Cal. App.3d 495, 513 [238 Cal. Rptr. 436]; Constance B. v. State of California (1986) 178 Cal. App.3d 200, 207 [223 Cal. Rptr. 645]; see also Weissich v. County of Marin (1990) 224 Cal. App.3d 1069, 1083 [274 Cal. Rptr. 342].)
(10) "[L]iability arising from defective manufactured products is premised on proof of a causal relationship [cause in fact] between the defect and the injury." (Greening v. General Air-Conditioning Corp. (1965) 233 Cal. App.2d 545, 549 [43 Cal. Rptr. 662]; see also Doupnik v. General Motors Corp. (1990) 225 Cal. App.3d 849, 861 [275 Cal. Rptr. 715] [products liability case and the "but for" causation test]; Akins v. County of Sonoma (1967) 67 Cal.2d 185, 198-199 [60 Cal. Rptr. 499, 430 P.2d 57] [liability on a *1617 negligence theory requires plaintiff to show that defendant's negligence contributed in some way to plaintiff's injury so that "but for" the defendant's negligence the injury would not have occurred].)
(4e) Because the parking brake was inoperable due to the improper maintenance, it made no difference where the parking brake lever was located. GMC had no liability unless the claimed design defect was "... a substantial contributing factor to plaintiff's injuries.... [Citation.]" (Endicott v. Nissan Motor Corp. (1977) 73 Cal. App.3d 917, 926 [141 Cal. Rptr. 95, 9 A.L.R.4th 481].) Phrased otherwise, if the collision would have occurred even if the parking brake "... had been properly located, its location was not a substantial factor in bringing about the ... [collision] and was therefore not a contributing cause thereof. [Citation.]" (Signorelli v. Potter (1954) 43 Cal.2d 541, 545 [275 P.2d 449].)
Bunt's appeal is dismissed as moot. The judgment is otherwise affirmed. Respondent is awarded costs on appeal, to be paid by Visueta.
Stone (S.J.), P.J., and Gilbert, J., concurred.
NOTES
[1] Plaintiff's wrongful death action was severed from the cross-complaint and tried in April 1991. The jury rendered a defense verdict for Bunt and found Visueta 70 percent negligent. Bunt's defense judgment moots his appeal and cross-complaint based on the principle "`... [t]here can be no indemnity without liability.'" (Allis-Chalmers Corp. v. Superior Court (1985) 168 Cal. App.3d 1155, 1159 [214 Cal. Rptr. 615].)
[2] A manufacturer of a product may be liable for a design defect if "... the product failed to perform as safely as an ordinary consumer would expect ... [or] [¶] the design embodies `excessive preventable danger....'" (Barker v. Lull Engineering Co. (1978) 20 Cal.3d 413, 429-430 [573 P.2d 443, 96 A.L.R.3d 1].) "Under the second prong of Barker, the plaintiff must establish a prima facie case of causation. [Fn. omitted.] That is, evidence must be adduced which would permit a jury to find that a design feature ... was a proximate cause of plaintiff's injury." (Campbell v. General Motors Corp. (1982) 32 Cal.3d 112, 119 [184 Cal. Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].)
[3] Vehicle Code section 26453 provides: "All brakes and component parts thereof shall be maintained in good condition and in good working order. The brakes shall be so adjusted as to operate as equally as practicable with respect to the wheels on opposite sides of the vehicle." As a truck owner, Visueta had a nondelegable duty to maintain the brakes in good working order. (Kaley v. Catalina Yachts (1986) 187 Cal. App.3d 1187, 1201 [232 Cal. Rptr. 384].)