Filed 10/28/14  Gallegos v. Kia Motors CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| REYNALDO GALLEGOS et al., | |
| Plaintiffs and Appellants, | G049400 |
| v. | (Super. Ct. No. 30-2012-00546752) |
| KIA MOTORS AMERICA, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Dismissed.

Law Offices of Brad Husen and Brad J. Husen for Plaintiffs and Appellants.

Lee Tran & Liang, K. Luan Tran and Ariel D. House for Defendant and Respondent.

\*          \*          \*

The underlying lawsuit is about the amount of uninsured motorist insurance provided in an automobile lease contract. Plaintiffs Herlinda Gallegos (Gallegos) and her husband Reynaldo (collectively, plaintiffs) contend the contract called for Kia to provide them with $1 million in uninsured motorist coverage for the vehicle Gallegos leased from Kia. The leased vehicle was involved in a traffic collision caused by another motorist whose insurance did not cover all the injuries suffered by plaintiffs. The question of the amount of uninsured motorist coverage provided by the lease was submitted to the court. The court found the policy did not provide $1 million in coverage, contrary to plaintiffs' contention. Prior to trial on the remaining issues, plaintiffs made an offer of a civil compromise (Code of Civ. Proc., § 998; all undesignated statutory references are to this code) to Kia, in which Kia would pay plaintiffs approximately $23,000. Kia accepted and judgment was entered per the terms of the civil compromise. Plaintiffs then appealed from the judgment, contending the trial court erred in concluding Kia did not promise to provide $1 million in uninsured motorist coverage. Kia has filed a motion seeking sanctions against plaintiffs for a frivolous appeal. We dismiss the appeal. Plaintiffs cannot appeal from the judgment entered pursuant to the civil compromise. We also deny Kia's motion.

I

FACTS AND PROCEDURAL SETTING

On July 11, 2008, Gallegos, an employee of defendant Kia Motors America, Inc. (Kia), took advantage of a benefit offered by Kia and leased a Kia automobile from her employer. The monthly lease payments were thereafter deducted from Gallegos's paycheck.

The lease contained the following provision concerning insurance coverage: "[Kia] will maintain comprehensive, collision, liability, uninsured motorist and medical insurance. . . ." The lease does not, however, state the amount of insurance

2

to be maintained on the vehicle.  In her deposition testimony, Gallegos admitted she had no idea what amount of insurance the lease provided.

There was evidence Kia provided $1million uninsured motorist insurance on vehicles it leased to its employees in other states, but in 2005, Kia started a policy of rejecting uninsured motorist insurance in those states permitting such a waiver, including California.  Almost 11 months before Gallegos and Kia entered into the lease agreement, Kia informed its insurance company that Kia rejected uninsured motorist coverage in California.

Approximately two months after leasing the automobile, plaintiffs were involved in a traffic accident.  The complaint alleged the other driver was responsible for the collision and that driver carried only the minimum amount of insurance required by California, $15,000 per person and $30,000 total per occurrence.  It further alleged plaintiffs settled the matter for the other driver's policy limits, but that that amount was insufficient to fully compensate plaintiffs.  Additionally, plaintiffs obtained a settlement on a separate insurance policy they had.

Understanding the court's resolution of the issue of whether the lease provided $1 million in uninsured motorist insurance "could potentially result in a dispositive resolution, a pre-trial settlement, or fewer issues to be litigated during trial," the parties stipulated to the court deciding, after "summary judgment or summary adjudication-type briefing," whether the lease agreement required Kia to maintain $1 million in uninsured motorist insurance on the leased vehicle.  After briefing, the court concluded plaintiffs failed to prove the lease required Kia to maintain $1 million in uninsured motorist coverage.  In so ruling, the court concluded Gallegos could not contradict her deposition testimony that she did not know the limits of the amount of uninsured motorist insurance to be carried by Kia.  (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [no substantial evidence of triable fact where

3

plaintiff made clear and unequivocal admission in deposition]; *Barton v. Elexsys Internat., Inc.* (1998) 62 Cal.App.4th 1182, 1191-1192 [disregard declaration contrary to deposition testimony]; *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613 [concessions in discovery control over contrary declarations filed in motion for summary judgment].)

Plaintiffs subsequently made Kia offers to compromise the matter. (§ 998.) Kia accepted plaintiffs' offers to compromise, agreeing judgment could be entered against it and in favor of Gallegos in the amount of $10, 909 and in favor of her husband in the amount of $11,999. Judgment was entered per the compromise. Plaintiffs thereafter filed a notice of appeal from the judgment entered pursuant to the compromise. Kia subsequently filed a motion for sanctions for plaintiffs prosecuting a frivolous appeal.

II

DISCUSSION

A. *The Appeal*

Section 998 authorizes the parties to dispose of an action with the entry of an agreed upon judgment. (§ 998, subd. (b).) When the offer is accepted and filed with the court, judgment is thereafter entered in accordance with the agreement. (§ 998, subd. (b)(1).) Although section 904.1 generally authorizes an appeal from a final judgment (§ 904.1, subd. (a)(1)), it has long been the law in this state that one may not appeal from what is in effect a "consent judgment." (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817, citing *Mecham v. McKay* (1869) 37 Cal. 154; see also *Brotherton v. Hart* (1858) 11 Cal. 405 [parties cannot appeal from an order to which they consented]; *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 667-668 ["appropriate procedure to challenge a section 998 judgment is to request the trial court to vacate the judgment pursuant to section 473," not by appealing from the

4

consented to judgment].)  In *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, the Supreme Court acknowledged the phrase *consent judgment* refers to "a judgment entered by a court under the authority of, and in accordance with, the contractual agreement of the parties [citation], intended to settle their dispute fully and finally [citation]."  (*Id.* at p. 400.)

There is a limited exception to the rule prohibiting an appeal from a consent judgment when it appears "'from the record that the consent was given only *pro forma* to facilitate an appeal, and with the understanding *on both sides* that the party did not thereby intend to abandon his right to be heard on the appeal in opposition to the judgment or order.  In other words, we will construe the stipulation according to the intention and understanding of the parties at the time, and give effect to it accordingly.'"  (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 401, quoting *Mecham v. McKay*, 37 Cal. at pp. 159, second italics added.)

The rule prohibiting an appeal from a consent judgment and the exception to the rule each give effect to the intent of the parties.  The rule prohibiting an appeal is based on the theory that parties having consented to a judgment have "'expressly waive[d] all objection to it,'" and consequently should not be permitted to appeal from the judgment.  (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 400.)  In refusing to consider appeals from consent judgments intended to end the lawsuit, the courts give effect to the intent of the parties consenting to the judgment.  The same is true when the court applies the exception to the general rule.  (*Id.* at p. 401.)  "The rationale turns on the intent of the parties *either* to settle their dispute fully and finally *or* merely to hasten its transfer from the trial court to the appellate court.  The rule covers cases in which the parties intended a full and final settlement of their dispute, and the exception covers those in which they intended merely a hastening to its trial-court to appellate-court transfer."  (*Ibid.*)

5

Plaintiffs appealed after judgment was entered as the result of a civil compromise. (§ 998.) They contend they may do so based on the exception recognized in *Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th 383. The exception does not apply here because the evidence does not indicate the parties intended the consent judgment to merely serve as a means to hasten an appeal, rather than as a judgment fully settling the controversy.

Immediately after the court found the lease did not require Kia to provide Gallegos with $1 million in uninsured motorist insurance, Kia's attorney stated his intent to "make some fairly generous offer to the plaintiff *to resolve this thing*." (Italics added.) Plaintiffs' attorney stated his client's would consider the court's ruling an appealable order and would appeal. He also stated he did not want to put everyone through a trial. The court made clear its opinion that the ruling was not in and of itself an appealable order and there must be an appealable judgment. The court suggested that if plaintiffs want to pursue an appeal, the way to do it would be by stipulating to a judgment *with another stipulation that the judgment is appealable*. Plaintiffs' counsel stated there would be no trial in this matter. He said his clients would either settle the case or appeal.

According to the record on appeal, approximately three months after the court's ruling, plaintiffs each made a separate offer to compromise. Kia accepted the Gallegos' offers to compromise, agreeing judgment would be entered against it in the amount of $10,909 in favor of Gallegos and in the amount of $11,999 in favor of her husband, Reynaldo. Neither the offers to compromise, the acceptance of the offers, or the agreed to judgment made any mention of a right to appeal from the judgment. If it was the intent of plaintiffs to merely create a judgment to facilitate an appeal to this court, that intent could have easily been inserted into the offer to compromise. Given the fact their attorney had stated they would either settle the matter or appeal, and the offer to compromise made no mention of the intent to appeal from any judgment entered as a

6

result of an acceptance of the offers, there is no reason to conclude the *parties* agreed the judgment would be appealable. From all outward appearances, plaintiffs resolved the matter for all purposes and in doing so each accepted thousands of dollars from Kia, consistent with the statement made in court by the attorney for Kia that he intended to "resolve" the matter and the statement by the Gallegos' attorney that his clients would either appeal or settle the matter.

In their reply brief, plaintiffs contend *Building Industry Assn. v. City of Camarillo*, *supra*, 41 Cal.3d 810, supports their position. It does not. The stipulated disposition in *Camarillo*— dismissal of the complaint—was accompanied by a statement to the effect that the sole purpose of the stipulated judgment was to permit the plaintiff to appeal certain trial court rulings. (*Id*. at p. 816.) The stipulation in *Camarillo* demonstrated the parties intended the judgment as merely a means to facilitate an appeal, thus giving rise to the exception to the rule against appeals from consent judgments. No such stipulation was entered in this case, despite the trial court's recommendation that such a stipulation should be entered into if plaintiffs wished to appeal.

Similarly, in *Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, the court found the consent judgment could be appealed because it was clear from the language used in the stipulation of the parties that the judgment was being entered into so Monticello could "'seek immediate appeal of critical issues in this action.'" (*Id*. at p. 1382.) Again, there is no such evidence in the present case. Rather, plaintiffs made offers to compromise their dispute with Kia, an offer Kia accepted. There was absolutely nothing in the offers to alert Kia the offer was something other than what it purported to be—a compromise resolution to the lawsuit. Accordingly, we conclude the judgment was consensually entered into as a result of a compromise agreed to by all parties and no appeal may be taken therefrom. We therefore dismiss the appeal.

B. *The Motions for Sanctions*

Kia filed a motion for sanctions based on plaintiffs filing an appeal from a nonappealable judgment. Rule 8.276(a)(1) of the California Rules of Court authorizes an award of sanctions against an attorney or party for "[t]aking a frivolous appeal or appealing solely to cause delay." When a party has filed a motion seeking sanctions, it must be accompanied by a declaration supporting the amount of the monetary sanction sought. (Cal. Rules of Court, rule 8.276(b)(1).)

There is a difference between a meritless appeal and a frivolous appeal. Given a litigant's right to appeal, the definition of a frivolous appeal "'must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals. Justice Kaus stated it well. In reviewing the dangers inherent in any attempt to define frivolous appeals, he said the courts cannot be "blind to the obvious: the borderline between a frivolous appeal and one which simply has no merit is vague indeed . . . . The difficulty of drawing the line simply points up an essential corollary to the power to dismiss frivolous appeals: that in all but the clearest cases it should not be used." [Citation.] The same may be said about the power to punish attorneys for prosecuting frivolous appeals: the punishment should be used most sparingly to deter only the most egregious conduct.' (*In re Marriage of Flaherty* [(1982)] 31 Cal.3d [637,] 650–651.)" (*In re Reno* (2012) 55 Cal.4th 428, 513.)

There are two different views of frivolousness. Under the subjective view, the motives of the appellant or appellant's counsel are considered. When the subjective intent of the appellant or counsel is at issue, courts look to determine whether the appeal was brought only for purposes of delay. (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at

8

p. 649.)  It does not appear plaintiffs appealed in this matter "solely to cause delay." They prevailed in the judgment from which they have appealed.

As we conclude the appeal is not frivolous under the subjective standard, we turn to the objective standard.  When the appeal was not filed for an improper purpose, an appeal should be found to be frivolous only when "'any reasonable person would agree that the point is totally and completely devoid of merit, and, therefore, frivolous.'  [Citations.]" (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 649.)  "'*An appeal that is simply without merit is **not** by definition frivolous and should not incur sanctions.  Counsel should not be deterred from filing such appeals out of a fear of reprisals.*'  [Citations.]" (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 340.)

The appeal in this matter lacks merit in that a party cannot generally appeal from a stipulated judgment.  This is especially true in a case such as this where there is nothing in the record to indicate the stipulated judgment in plaintiffs' favor was not intended to settle the case.  The issue sought to be litigated by plaintiffs on appeal—the superior court's determination of whether Kia was bound by the lease to maintain $1 million in uninsured motorist insurance on plaintiffs' leased vehicle—could have been raised following a stipulated judgment expressly stating the judgment was merely the means of expediting an appeal and saving the expense of a useless trial, the crucial issue having already been decided by the court.  Although we find the appeal lacked merit, we do not find on this to be a matter necessitating the award of sanctions.

## III

## DISPOSITION

The appeal is dismissed.  Kia shall recover its costs on appeal.  Kia's motion for sanctions is denied.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.