Filed 7/13/21  Lungin v. Ulta Salon Cosmetics & Fragrance CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| REBECCA LUNGIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ULTA SALON COSMETICS & FRAGRANCE, INC., et al.,<br><br>    Defendants and Respondents. | D077642<br><br><br>(Super. Ct. No. 37-2018-00058268-CU-WT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Hewgill Cobb & Lockard, Efaon Cobb and Daria Cortes, for Plaintiff and Appellant.

Littler Mendelson, Jody A. Landry and Krystal Norris Weaver for Defendants and Respondents.

Rebecca Lungin sued her former employer, Ulta Salon Cosmetics & Fragrance, Inc. (Ulta), and two former managers, Rachel Meeker and Julie Robisch, (collectively, respondents) and alleged, among other claims, that respondents violated the California Fair Employment and Housing Act

(FEHA) by discriminating against her and failing to provide reasonable accommodations after she disclosed that she was pregnant.

Following discovery, respondents moved for summary judgment. The trial court concluded Lungin failed to establish a triable issue of material fact as to any asserted cause of action, and that Lungin failed to demonstrate a legally cognizable harm as to the first seven asserted causes of action. Accordingly, the court granted summary judgment in favor of respondents on the complaint.

Lungin appeals and asserts she established triable issues of material fact with respect to the first seven claims in her complaint. Considering the entirety of the record before us and resolving all doubts in favor of Lungin, we conclude Lungin has not established a triable issue of material fact and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Lungin's Employment at Ulta*

Lungin began working for Ulta in June 2017. After some initial training, Lungin accepted a position as a Beauty Advisor in the Carlsbad store. The job required Lungin to lift up to 50 pounds, typically on "truck days" when employees assisted in unloading boxes and pallets from delivery trucks and placing the items on the retail floor for sale.

Sometime in August, Lungin informed Ulta she was pregnant. On August 29, 2017, Lungin's doctor provided a letter, which Lungin provided to Ulta, indicating Lungin was receiving prenatal care and should be excused from work on August 29 and 30. The letter stated Lungin could return to work on August 31 *without any restrictions*.

On October 11, 2017, Lungin's doctor provided another letter indicating Lungin would need certain accommodations to continue working through the

2

remainder of her pregnancy. Specifically, the letter stated Lungin should not lift, push, or pull anything more than 20 pounds; should not stand for prolonged periods of time; and should be allowed to take breaks as needed. Lungin gave the letter to Ulta during her next shift. Thereafter, Ulta scheduled Lungin to meet the requested accommodation. Truck days typically began with unloading the pallets and boxes at 5:00 a.m., and those tasks were typically completed by 7:00 a.m. or 8:00 a.m. After October 11, Lungin started work at 7:00 a.m. on one occasion, at 8:00 a.m. on two other occasions, and otherwise did not begin a shift before 9:00 a.m.

Approximately one week later, on or around October 18, 2017, Lungin placed a call to Ulta's human resources hotline. She complained she was having difficulties with the general manager and comanager at her store. Lungin reported the managers mistreated employees and put too much pressure on employees to encourage customers to sign up for store credit or rewards cards. In addition, Lungin indicated she had inquired about the lead cashier position and was told she could not apply for the position because she was not available on Sundays. The general manager subsequently told Lungin she would be able to obtain the position if she continued to obtain sufficient credit card and reward card enrollments. Lungin said she felt they did not want her in the lead cashier position because she was pregnant. Lungin did not raise any complaints regarding her request for accommodation.

In a subsequent letter dated October 30, 2017, Lungin's doctor requested that Lungin be permitted to wear flat shoes and have access to a chair at all times. Lungin gave the letter to Julie Robisch, the general manager for the Carlsbad store, and Robisch forwarded a copy to the district manager. In the associated e-mail, Robisch indicated Lungin "used a chair

the other day as she was struggling" and further stated, "I want to make sure that we are adhering to whatever we should be doing for [Lungin]," Human resources confirmed Lungin was permitted to sit if she needed to do so. According to Lungin, Robisch and Meeker either refused to allow her to use a chair or chastised her for using a chair on at least two separate occasions thereafter, and she had to remind them that human resources had approved the use of the chair.

Around the same time, in mid- to late October, Lungin requested a transfer to the Oceanside store. The request was approved and Lungin was transferred to the Oceanside store in early December 2017. She went on maternity leave approximately two weeks later. Lungin had no complaints regarding the provision of requested accommodations while at the Oceanside store. Following her maternity leave, Lungin voluntarily chose not to return to work at Ulta based on an inability to find suitable and cost-effective childcare.

*Lungin's Complaint*

In November 2018, Lungin filed a complaint against Ulta,[1] Meeker, and Robisch. Therein, Lungin asserted she was hired by Ulta as a Beauty Advisor at the Carlsbad store in June 2017 and was initially recognized for her top performance. Approximately four months later, in October, Lungin disclosed that she was pregnant and provided documentation of her work restrictions from her doctor, which included not lifting anything over 10 pounds, access to a chair at all times, and the ability to wear flat shoes.

The complaint further alleged that, despite Lungin's requests, Ulta continued to schedule her for weekend shifts during which she was required

---

[1] The complaint initially named Ulta Beauty Cosmetics, LLC as a defendant, but Lungin later amended the complaint to replace Ulta Beauty Cosmetics, LLC with Ulta Salon, Cosmetics & Fragrance, Inc.

to lift 15-pound boxes.  When Lungin told her managers that the lifting exceeded her restrictions, they disregarded her.  They also denied her request to use a chair and chastised her for moving slowly and being unable to stand for an extended period of time.  Lungin requested a transfer to a different location based on her managers' refusal to provide accommodations.  Ulta failed to acknowledge the request for approximately two months, but ultimately moved her to a different store.

Based on these allegations, Lungin asserted the following nine causes of action:  violation of FEHA, hostile work environment (Gov. Code,[2] § 12940, subd. (j)); violation of FEHA, disability discrimination (§ 12940, subd. (a)); violation of FEHA, gender discrimination (§ 12940, subd. (a)); violation of FEHA, failure to engage in an interactive process (§ 12940, subd. (n)); violation of FEHA, disability discrimination due to failure to provide a reasonable accommodation (§ 12940, subd. (m)); violation of FEHA, retaliation (§ 12940, subd. (j)); violation of FEHA, failure to prevent discrimination (§ 12940, subd. (k)); wrongful termination in violation of public policy[3]; failure to provide meal and rest periods (Lab. Code, §§ 218.5, 218.6, 226.7, 512).

Lungin attached a right to sue letter issued by the Department of Fair Employment and Housing (DFEH) in November 2018 as an exhibit to the complaint.  In the associated DFEH complaint, Lungin alleged she was discriminated against based on her gender, that she was denied accommodations based on her pregnancy, and that she was denied a work

---

[2]    All further statutory references are to the Government Code, unless otherwise noted.

[3]    Lungin subsequently dismissed this claim and, accordingly, it is not at issue in the present appeal.

environment free of discrimination. In addition, she asserted she experienced retaliation based on her request for accommodations.

Respondents entered a general denial and asserted a number of affirmative defenses, including failure to exhaust administrative remedies.

*Summary Judgment Proceedings*

Approximately one year later, following discovery, respondents filed a motion for summary judgment. Respondents asserted Lungin could not prove at least one element of each of the asserted claims in light of admissions she made during her deposition and in verified responses to written interrogatories, that Lungin failed to exhaust her administrative remedies as to certain claims, and that Lungin failed to establish any harm with respect to claims one through seven.

In support of their motion, respondents submitted a separate statement of undisputed facts and several declarations. Respondents also provided Lungin's responses to "Form Interrogatories—Employment Law" and excerpts from the depositions of Lungin and Brittany Ludwig.

Ludwig was a manager at Ulta from February 2017 to September 2017. Ludwig and Lungin confirmed that truck days began with unloading pallets from the truck at 5:00 in the morning. Ludwig said the boxes were typically off the pallets by 7:00 or 8:00, and she would try to schedule Lungin to start later than that so Lungin would not have to lift the heavy boxes.

Devon Byrne, Ulta's vice president of human resources, provided a copy of Lungin's time punch records, which confirmed Lungin did not start work before 7:00 a.m. after October 2, 2017. He also set forth the various discrimination, harassment, and retaliation policies and procedures in place at Ulta during the relevant period and provided copies of the written policies

6

and an e-mail documenting a call Lungin made to the human resources hotline.

Robisch also provided a declaration. She provided a copy of the e-mail she sent to the district manager regarding Lungin's request to use a chair and said she did not see any issue with the accommodations Lungin requested.

*Opposition to the Motion for Summary Judgment*

Lungin opposed the motion and the separate statement of undisputed facts. In her opposition papers, Lungin relied primarily on excerpts of her deposition and the depositions of Ludwig and Alexis Braunreiter, as well as unsigned, unverified e-mail statements and text messages from various Ulta employees.

At her own deposition, Lungin said that she lifted a box in excess of 20 pounds on at least one occasion "because there was no one else to do it at the moment." In addition, she said she was not provided a chair "for the longest time" after she provided the letter from her doctor and that her managers told her she could not use a chair on at least two occasions.

Ludwig testified other managers continued to schedule Lungin to work on truck days and she heard another manager say it was good for Lungin to lift boxes in excess of 20 pounds. Ludwig stated she was aware of Lungin's lifting restrictions based on a letter from Lungin's doctor, which she believed she received in August 2017. However, when counsel showed her the letter from Lungin's doctor dated August 29, she could not explain why it said Lungin could return to work without restrictions and admitted she no longer worked at Ulta by October 2017.

Braunreiter was a Beauty Advisor with Ulta and worked with Lungin in the Carlsbad store. Braunreiter said she knew Lungin was restricted from

7

lifting heavy boxes, but she never worked with Lungin on a shipment day once Lungin was visibly pregnant. She never saw Lungin use a chair while working at the register. She heard Lungin request a chair, and heard from others that management refused the request, but she never personally witnessed anyone telling Lungin she could not have a chair. She also never heard management deny Lungin a break but did hear them delay her breaks sometimes when the store was busy.

*Evidentiary Objections and Trial Court Ruling*

Respondents provided written objections to the exhibits and deposition testimony submitted by Lungin. In particular, respondents asserted much of the evidence presented was irrelevant to the claims presented by Lungin, and that Lungin could not rely upon the testimony of another witness to create an issue of fact regarding her own previous admissions. In addition, respondents asserted the unsigned e-mail statements and text messages lacked foundation and were not admissible. The trial court ruled separately on the objections and sustained the vast majority of them.

After hearing argument, the trial court concluded Lungin had not established a triable issue of fact as to any of the asserted claims and granted summary judgment in favor of respondents.

Lungin appeals.

DISCUSSION

Lungin asserts the trial court erred in granting summary judgment and that she did establish a triable issue of fact with respect to the first seven causes of action asserted in the complaint.[4]

I. *General Legal Principals Governing Summary Judgment*

Summary judgment is appropriate when the moving party establishes there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Company* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to make a factual finding that is necessary under the pleadings in favor of the party opposing the motion. (*Id.* at pp. 843, 850.) The court may not weigh the evidence and must deny the motion if the evidence presented by the opposing party, or any inferences reasonably drawn therefrom, raises any triable issue of material fact. (*Id.* at p. 856.)

Where, as here, a defendant moves for summary judgment, the defendant has the initial burden of presenting evidence sufficient to establish the plaintiff either cannot prove at least one element of each asserted cause of action, or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 853.) If the defendant does so, the burden shifts to the plaintiff to present evidence demonstrating there is a

---

[4]    Lungin initially included her ninth cause of action for meal and rest break violations, but subsequently stipulated she had agreed to release such claims in connection with a class action settlement. Respondents relied on that representation in their responsive briefing and Lungin did not file a reply brief. Accordingly, we do not address Lungin's arguments with respect to the ninth cause of action.

triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2);  *Aguilar, supra,* at p. 850.)

On appeal from a summary judgment, we apply the same legal standard as the trial court and independently assess the correctness of the trial court's ruling.  (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 231 (*Moore*).)  We first identify the issues framed by the pleadings.  (*Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 617 (*Pierson*).)  We determine whether respondents, as the moving party, have established facts justifying judgment in their favor and, if so, determine whether Lungin, as the nonmoving party, has demonstrated a triable issue of material fact with respect to any issue or defense raised by respondents.  (*Id.* at pp. 617–618.)

In conducting that analysis, we consider all the evidence set forth in the moving papers and the opposition, but do not consider any evidence to which objections have been made and properly sustained.  (Code Civ. Proc., § 437c, subd. (c); *Pierson, supra,* 4 Cal.App.5th at p. 618; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*).)  Like the trial court, we consider the evidence in the light most favorable to Lungin, scrutinize respondents' evidentiary showing, and make all reasonable inferences and resolve all evidentiary doubts in favor of Lungin.  (*Pierson,* at p. 618; *Yanowitz,* at p. 1037.)

II.  *Analysis*

A.  *Evidentiary Issues*

As an initial matter, respondents assert Lungin continues to rely on evidence previously rejected by the trial court, and that this court should not consider any evidence for which the trial court sustained objections.  We agree.

Although we apply a de novo standard of review on appeal, our review of the evidence is limited by the evidentiary rulings of the trial court. (See *Yanowitz, supra*, 36 Cal.4th at p. 1037; *State Dept. of Health Services v. Sup. Ct. (McGinnis)* (2003) 31 Cal.4th 1026, 1035; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 334.) Here, respondents provided written objections to numerous pieces of evidence submitted by Lungin in support of her opposition to the motion for summary judgment, and the trial court sustained a number of those objections. Most notably, the trial court sustained objections to the unsigned, unverified e-mail statements and text message screenshots submitted by Lungin. (See *Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 25, fn. 2 [unsigned declaration is not admissible evidence as required to support opposition to summary judgment motion].) Lungin continues to rely on this evidence on appeal, but does not dispute, or even acknowledge, the trial court's evidentiary rulings.

As Lungin does not contest the evidentiary rulings of the trial court on appeal, we will not consider any of the evidence for which the trial court sustained objections.

B. *Lungin Has Not Established a Triable Issue of Material Fact with Respect to any Asserted Claim*

1. *First Cause of Action: Hostile Work Environment*

The first cause of action in Lungin's complaint asserts a hostile work environment in violation of section 12940, subdivision (j).

Section 12940, subdivision (j)(1) makes it unlawful for an employer to harass an employee because of a physical disability or medical condition. (§ 12940, subd. (j)(1).) A hostile work environment claim is one theory upon which a plaintiff may prove harassment in violation of section 12940, subdivision (j). (See *Miller v. Dept. of Corrections* (2005) 36 Cal.4th 446, 461–462 (*Miller*). "[T]o prevail, an employee claiming harassment based upon a

hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." (*Miller,* at p. 462; see also *Aguilar v. Avis Rent A Car Sys. Inc.* (1999) 21 Cal.4th 121, 129–131.)

### a. *Lungin Admitted She Was Not Subjected to Unlawful Harassment*

In her complaint, Lungin alleged she was subjected to "unwanted harassing conduct that was both severe and pervasive because of her gender and pregnancy," and that "Robisch and Meeker participated in and caused the harassing conduct." However, Lungin subsequently denied those allegations in response to respondents' "Form Interrogatories—Employment Law." Specifically, Interrogatory No. 203.1 asked whether Lungin contended that she was "unlawfully harassed" in her employment and, if so, asked her to set forth the details of any such contention. In her verified response, submitted on October 28, 2019, Lungin stated, "No" and did not provide any response to any of the related subsections seeking additional detailed contentions. As the trial court concluded, in the context of the motion for summary judgment, Lungin was bound by this and other admissions she made during discovery. (See *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613 (*Visueta*) ; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 (*D'Amico*).)

Lungin asserts the trial court erred in relying on *Visueta* because the admission at issue in *Visueta* was made at deposition, and not in written discovery responses. (See *Visueta, supra,* at p. 1613.) However, nothing in *Visueta* limits the general rule to deposition testimony and, to the contrary, the court in *Visueta*, and the trial court in this case, relied on *D'Amico*, in which the court specifically addressed admissions made in the context of

12

written discovery.  (*Visueta, supra,* at p. 1613, *D'Amico, supra,* 11 Cal.3d at pp. 10–11, 22–23, fn. 17; see also *Rivera v. Southern Pacific Trans. Co.* (1990) 217 Cal.App.3d 294, 299 [finding no issue of material fact based on plaintiff's answer to interrogatories].)[5]

Lungin further asserts, without authority, that even if we apply the "*D'Amico* rule," we should credit her deposition testimony and the testimony of numerous other witnesses over her response to an "outlier response to a vague, ambiguous, and overbroad Form Interrogatory."  As previously discussed, the trial court sustained objections to much of the evidence Lungin relies upon.  Moreover, the interrogatory at issue was part of the Judicial Council approved set of "Form Interrogatories—Employment Law" and Lungin does not explain how the interrogatory at issue was vague, ambiguous, or overbroad.  (See Code Civ. Proc., § 2033.710.)  It is clear on the face of the document the form interrogatories are intended to provide additional detail on the scope of the plaintiff's claims, and the interrogatory at issue clearly related to claims based on harassment under FEHA.  Despite this, and despite including a claim for hostile work environment in the complaint, Lungin provides no explanation for denying the existence of unlawful harassment or failing to provide any further detail regarding her claims in her response.  (Compare *Mason v. Marriage & Family Ctr.* (1991) 228 Cal.App.3d 537, 546 [triable issue of fact established despite admission in interrogatory response where plaintiff adequately explained the error].)

---

[5]     Lungin also asserts respondents mischaracterize the court's holding in *Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510 (*Scalf*)  regarding the effect of admissions made during discovery.  We need not address this assertion as the trial court did not rely on *Scalf*, and neither do we.

We therefore conclude Lungin is bound by her response to the interrogatory and, accordingly, cannot establish a claim for harassment in violation of FEHA.  (See *D'Amico, supra,* 11 Cal.3d at p. 22.)

### b.  *The Alleged Conduct Was Not Sufficiently Severe or Pervasive*

Even if we were to consider the merits of Lungin's hostile work environment claim, we would conclude Lungin has not established a triable issue of material fact because the alleged conduct was not sufficiently severe or pervasive.  (See *Miller, supra,* 36 Cal.4th at p. 462.)

Indeed, Lungin herself characterizes much of the alleged conduct as "passive micro-aggressions."  She asserts her managers used negative body language, responded with short answers or a curt voice, and rolled their eyes at her requests.  None of those actions are sufficiently severe or pervasive to create a hostile work environment.  (See *Ibid.*;  *Aguilar v. Avis Rent A Car Sys. Inc., supra,* 21 Cal.4th at pp. 129–131; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 142 [plaintiff must prove conduct interfered with work performance and would have seriously affected the psychological well-being of a reasonable employee].)  Further, much of the other conduct Lungin identifies—such as asking Lungin to work faster or praising the accomplishments of other employees—is conduct within the scope of common managerial tasks and, thus, does not constitute harassment as a matter of law.  (See *Reno v. Baird* (1998) 18 Cal.4th 640, 646–647 [acts commonly necessary for personnel management may result in discrimination, but not harassment].)

Lungin's only remaining allegation is that her managers denied her the use of a chair "[i]n a couple instances."  This is not sufficient to create a hostile work environment but, even if it were, we conclude *post* in the context

14

of Lungin's failure to accommodate claims that the undisputed evidence indicates Ulta did ultimately provide Lungin access to a chair as needed.

### c. *Lungin Failed to Exhaust Her Administrative Remedies*

Further, respondents assert, and the trial court concluded, Lungin failed to exhaust her administrative remedies with respect to this particular cause of action. To exhaust administrative remedies in the context of a FEHA claim, the plaintiff must specify the particular unlawful act forming the basis of the claim in the DFEH complaint. (See §§ 12960, subd. (d), 12965, subd. (b); *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613 (*Okoli*).) Here, Lungin did not identify harassment or a hostile work environment as a basis for her DFEH complaint.

Lungin contends it was sufficient that she alleged she was denied a workplace free of discrimination and/or retaliation. However, under FEHA, discrimination and retaliation are separate and distinct causes of action from harassment and hostile work environment. (See *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 708–709; *Miller, supra*, 36 Cal.4th at pp. 460–466.) While acts of discriminatory *intimidation, ridicule, and insult* may be sufficient to form a claim for harassment or hostile work environment pursuant to FEHA, allegations of discrimination or retaliation, without more, are not. (See *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 409; *Miller*, at pp. 460–466.)

Accordingly, we agree with respondents and the trial court that Lungin failed to exhaust her administrative remedies with respect to her hostile work environment claim.

### 2. *Second and Third Causes of Action: Disability and Gender Discrimination*

Lungin's second and third causes of action are for disability discrimination and gender discrimination in violation of section 12940,

15

subdivision (n). We address these claims together as both are based on the fundamental allegation that Ulta discriminated against Lungin because of her pregnancy. (§ 12926, subd. (r)(1) ["sex," or gender, under FEHA includes pregnancy and childbirth].)

Discrimination claims pursuant to FEHA are analyzed under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214 (*Harris*); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1181 (*Husman*)). The "plaintiff has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion. A prima facie case establishes a presumption of discrimination. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer discharges this burden, the presumption of discrimination disappears. The plaintiff must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive. The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff." (*Harris*, at pp. 214–215; see also *Guz*, at pp. 354–356.)

Respondents assert, and the trial court concluded, summary judgment is appropriate with respect to each of Lungin's discrimination causes of action because Lungin failed to establish that she suffered an adverse employment action. (See *Husman, supra*, 12 Cal.App.5th at p. 1181; *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150,

16

1158 [trial court properly granted summary judgment where plaintiff failed to establish an adverse employment action].)

In the complaint, Lungin alleged Ulta refused to accommodate her pregnancy, refused to approve her transfer to the Oceanside store for almost two months, and subjected her to harassing conduct. In responses to the "Form Interrogatories—Employment Law," Lungin identified the following two adverse employment actions: 1) respondents' refusal and failure to provide pregnancy related accommodations, and 2) respondents failure to provide all rest and meal breaks owed under the law. In a related interrogatory response, Lungin further alleged Meeker continued to schedule her on truck days, other managers required her to lift boxes over 20 pounds, and Robisch refused to let her use a chair on the salesfloor and insisted that she walk back to the break room after she nearly fainted.

In response to the motion for summary judgment, however, Lungin asserted she suffered "various adverse employment actions after disclosing that she was pregnant, such as discriminatory intimidation (her managers attitudes towards Plaintiff deteriorated more and more with each request for accommodation), refusal of a deserved promotion, disproportionate monitoring or targeting and overscrutinization [*sic*], among other things." In her briefing on appeal, Lungin focuses solely on the assertion that Ulta refused to consider her for a promotion to the position of lead cashier.

As with her hostile work environment claim, Lungin is limited by the allegation in the complaint and the disclosures made in her written discovery responses. (See Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra,* 25 Cal.4th at p. 850; *Pierson, supra,* 4 Cal.App.5th at pp. 617–618; *Visueta, supra,* 234 Cal.App.3d at p. 1613; *D'Amico, supra,* 11 Cal.3d at p. 22.) Specifically, Lungin did not identify failure to promote as an adverse employment action

17

in her complaint or her written discovery responses and has not provided any explanation for the omission.

Regardless, even if we were to consider the record before us with respect to Lungin's contention that she was denied a promotion because of her pregnancy, we would conclude Lungin has not established a triable issue of material fact. To establish a prima facie claim for discrimination based on failure to promote, Lungin had to prove that she did everything that was required of her as an applicant and met all of the qualifications of the position but still was not hired. (See *Levy v. Regents of University of California* (1988) 199 Cal.App.3d 1334, 1347.) Lungin asserts Robisch's explanation that she was not qualified because she did not work on Sundays was clear pre-text, but Lungin does not provide a job description or any other evidence regarding the actual qualifications for the position or indicating she met those qualifications. Further, despite testifying that other managers told her she was qualified for the position, Lungin does not allege, let alone present evidence, that she made any formal attempt, or otherwise did all that was necessary, to apply to the position. In fact, her own testimony indicates she was not really looking for a promotion and was not sure whether she was qualified.

Similarly, even if considered, Lungin's remaining assertions are also insufficient to establish an adverse employment action. An act or omission "that is merely contrary to the employee's interests or not to the employee's liking" does not constitute an adverse employment action. (*Malais v Los Angeles City Fire Dept.* (2007) 150 Cal.App.4th 350, 357–358 (*Malais*).) Instead, the act or omission must have a material and detrimental effect on the terms, conditions, or privileges of the plaintiff's employment. (*Id.* at p. 358; *Holmes v. Petrovich Developments Co., LLC* (2011) 191 Cal.App.4th

18

1047, 1063 (*Holmes*).)  Here, Lungin makes vague allegations regarding discriminatory intimidation, disproportionate monitoring, targeting, and overscrutinization, and "other things" but, as with her claim for harassment, she has not made a prima facie showing that any of these had a substantial or detrimental impact on the terms, conditions, or privileges of her employment.  (See *Malais, supra,* 150 Cal.App.4th at pp. 357–358; *Holmes,* at p. 1063 [minor or trivial adverse actions that are likely to do no more than anger or upset an employee are not adverse employment actions].)

Lungin's remaining allegations relate more directly to her failure to accommodate claim, which we address *post*, and her failure to provide adequate meal and rest breaks claim, which she no longer asserts.  (See *Brown v. Los Angeles Unified School District* (2021) 60 Cal.App.5th 1092, 1107 (*Brown*) [declining to construe failure to accommodate allegations as adverse employment actions sufficient to support a discrimination claim].)

Accordingly, we conclude Lungin has not presented a triable issue of material fact with respect to her claims for gender or disability discrimination.

### 3. *Fourth and Fifth Causes of Action: Failure to Engage in the Interactive Process and Failure to Accommodate*

In her fourth and fifth causes of action, Lungin asserted Ulta failed to engage in the interactive process in violation of section 12940, subdivision (n) and failed to provide reasonable accommodations in violation of section 12940, subdivision (m).  We address these claims together as well.

Once an employee notifies her employer of a disability, the employee has a duty to cooperate with the employer and to explain his or her disability, and the employer has a duty to take positive steps to provide a reasonable accommodation for any associated limitations.  (*Brown, supra,* 60 Cal.App.5th at p. 1108.)  "A 'reasonable accommodation' [is] a modification or

19

adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Ibid*.)

"Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions. [citation] If a reasonable accommodation does not work, the employee must notify the employer, who has a duty to provide further accommodation." (*Brown*, *supra*, 60 Cal.App.5th at p. 1108.) An employer violates section 12940, subdivision (n) if the employer fails to engage in a good faith interactive process with the employee to determine an effective reasonable accommodation. (*Id*. at p. 1109; § 12940, subd. (n).)

"Failure to accommodate and failure to engage in the interactive process are separate, independent claims involving different proof of facts. The purpose of the interactive process is to determine what accommodations is required. Once a reasonable accommodation has been granted, then the employer has a duty to provide that reasonable accommodation." (*Brown, supra,* 60 Cal.App.5th at p. 1109.) The employer violates section 12940, subdivision (m) if it fails to actually provide the agreed upon accommodation. (*Ibid*.; § 12940, subd. (m).)

Here, Lungin asserts Ulta did not engage in the interactive process in good faith and did not provide reasonable accommodations and, instead, effectively ignored her requests. Specifically, she asserts respondents continued to schedule her for truck days, regularly required her to lift over 20 pounds, did not allow and/or chastised her for using a chair, and spoke negatively about her when she needed to take time off for a doctor's appointment. As the trial court concluded, the undisputed evidence

established Ulta engaged in the interactive process and provided reasonable accommodations to Lungin with respect to each of these assertions.

a. *Lungin's Lifting Restriction*

It is undisputed that Lungin was aware the beauty consultant position required her to lift up to 50 pounds and that Lungin's doctor initially stated that she was able to work without any restrictions. Thus, any lifting Lungin may have done during this initial period of employment at Ulta, even while pregnant, is not relevant. Instead, we focus our analysis on events that occurred after October 11, 2017, when Lungin first provided notice to respondents regarding her need for an accommodation.

After providing the note, Lungin asserts she requested that she *either* not be scheduled for truck days or that she be assigned work that did not require her to lift more than 20 pounds. The undisputed evidence indicates respondents complied with Lungin's request.

Truck days typically began at 5:00 a.m. and the heavy boxes were typically off the pallets by 7:00 a.m. or 8:00 a.m. Lungin's verified time records indicate that, as of October 11, 2017, she was generally scheduled to begin work at or after 9:00 a.m. On one occasion, she began work at 7:00 a.m. and on two other occasions, she began work at 8:00 a.m., but Lungin presents no evidence suggesting these were truck days or that she was asked to unload heavy boxes on any of these three occasions. To the contrary, Lungin herself testified that there were jobs that did not require heavy lifting even on truck days, such as sorting smaller containers of makeup into bins. These tasks were generally done an hour and a half after the unloading of pallets, which began at 5:00 a.m.

Lungin asserts Ulta ignored her request because she was still scheduled to work on truck days. Even if true, though, that fact alone is not

21

sufficient to establish a failure to accommodate. Lungin request to not work truck days *or* that she be assigned work on a that did not require her to life more than 20 pounds. Ulta accommodated that request by scheduling her to begin work on truck days after the heavy lifting was complete.

Lungin also asserts she lifted more than 20 pounds while working at Ulta after October 11, 2017, but she presents no credible evidence indicating Ulta required her to do so. At her deposition, Lungin stated she lifted an item over 20 pounds "[b]ecause there was no one else to do it." On one occasion, she let her coworker know she could not lift a box because it was too heavy, and the coworker lifted it for her. On another occasion, she said she told Meeker a box was too heavy for her to lift and Meeker said, "Okay. We need to get this box to the back, because the store is about to open." Rather than asking someone else for assistance, Lungin lifted the box herself and brought it to the back. On yet another occasion, Lungin was asked to push a cart, on wheels, containing more than 20 pounds of shampoo and conditioner. Lungin asked if she could use a smaller dolly to move fewer items at a time and Meeker told her she could use a basket that had been provided to carry a smaller number of items. When that was still too heavy, Robisch allowed her to use a smaller cart. Even viewing the evidence in the light most favorable to Lungin, Lungin was not *required* to lift, push, or pull an item over 20 pounds in any of these circumstances.

Lungin also relies on the testimony of Ludwig and Braunreiter, but neither present a triable issue of fact on this issue. Ludwig did not work at Ulta at all after October 11, 2017, and Braunereiter said she never worked a truck day with Lungin and never actually witness Lungin lift more than 20 pounds.

Accordingly, Lungin has not raised a triable issue of material fact with respect to Ulta failing to accommodate her lifting restrictions. Further, while failure to engage in an interactive process is a separate cause of action, the purpose of the associated process is to determine what accommodations are required. (*Brown, supra,* 60 Cal.App.5th at p. 1109.) Here, once Lungin presented her request for an accommodation precluding her from having to lift more than 20 pounds, respondents granted the request and provided the accommodation. (*Ibid.*) No further interactive process was necessary.

b. *Access to a Chair*

On October 20, 2017, Lungin provided a second doctor's note to Ulta requesting that she have access to a chair at all times. Again, the uncontroverted evidence establishes Ulta accommodated this request.

In the motion for summary judgment, respondents asserted Lungin always had access to a chair after October 30, 2017. They relied upon a declaration from Robisch in which Robisch stated she did not see a problem in accommodating Lungin's request to have access to a chair at all times, along with a copy of the e-mail Robisch sent indicating she wanted to "make sure that we are adhering to whatever we should be doing for [Lungin]." In addition, respondents pointed to Lungin's deposition, in which she conceded that human resources told her she was permitted to sit if she needed to and that she did sit down in the break room while working.

In response, Lungin provided an unsigned e-mail from a coworker at Ulta, for which the trial court sustained an objection, and her own deposition testimony. In the cited deposition testimony, counsel asked Lungin if she was provided a chair once human resources confirmed she was permitted to sit when needed. Lungin responded, "Not for the longest time. And then we had to come back to me giving this note. And I had to mention, like, 'If you

23

guys don't believe me, just call HR.  They're the ones that said, if I have this note, that I'm okay.  I'm okay to work with a chair if I need it.' ''

Although Lungin may have needed to remind her managers of the accommodation, the uncontroverted evidence indicates Lungin did have access to a chair thereafter.  At her deposition, Lungin explained that she "grabbed a chair" on one occasion when she realized she needed it, suggesting the chair was nearby and within reach.  Although she was initially told she could not have a chair, Lungin testified she stated, "[a]ctually, I can have a chair," and there is no indication she was not permitted to sit thereafter, or that she ever informed Ulta that her managers were not complying with the accommodation.  On another occasion, Lungin said she sat down in a chair that a coworker provided after nearly fainting.  She said Robisch told her a few minutes later that she could not have the chair "there"—presumably, at the register—and asked her to take her break in the break room.  When Lungin returned, Robisch permitted her to sit in a chair at the register for the remainder of the day.  Thus, Lungin's own testimony indicates that, while there may have been some disagreement about *where* she could use a chair, she was ultimately provided access to a chair as needed.

The only contrary evidence is Lungin's vague statement that she was not permitted to use a chair "for the longest time" after speaking with human resources.  However, such conclusory statements alone are insufficient to raise a trial issue of material fact to defeat summary judgment.  (See *Shugart v. Regents of University of Cal.* (2011) 199 Cal.App.4th 499, 508.)  Moreover, the mere fact that Lungin initially had to remind her managers that human resources had approved the requested accommodation did not result in serious mental or physical consequences and does not equate to a failure to engage in the interactive process or to provide the accommodation.  The

24

uncontroverted evidence indicates human resources granted Lungin's request for accommodation, and that Lungin was ultimately permitted access to and use of a chair in each alleged instance.

Accordingly, we conclude that Lungin has not raised a triable issue of material fact with respect to Ulta failing to engage in the interactive process or failing to accommodate Lungin's request to have access to a chair.

### c. *Medical Appointments*

Lungin also asserts Ulta failed to accommodate her because her managers spoke negatively about her when she needed to take time off for a doctor's appointment. Lungin has not previously raised this assertion in the context of her failure to engage in the interactive process or failure to accommodate claims and relies solely on inadmissible evidence to support the assertion. Regardless, Lungin does not allege, or provide any evidence to suggest, she was not permitted to take time off to attend necessary doctor's appointments. Even taking her allegation as true, a manager speaking negatively about her need to take time off does not give rise to a cause of action for failure to engage in the interactive process or failure to accommodate.

### d. *Transfer to Oceanside*

Although not specifically raised on appeal, Lungin previously alleged she requested transfer for the Oceanside store in mid- to late-October at least in part because Meeker and Robisch refused provide the accommodations she had requested. Lungin never told anyone at Ulta that her request to transfer was at all related to her need for accommodation, but, regardless, she was transferred to the Oceanside location in early December, less than two months after she made the request. Lungin concedes she had no further complaints regarding the provision of accommodations after the transfer.

25

Thus, even if we were to conclude that Meeker or Robisch failed to implement the approved accommodations, Ulta ultimately provided the requested accommodations by transferring Lungin to the Oceanside store.

Accordingly, Lungin failed to establish a triable issue of material fact and summary judgment was appropriate for both the fourth and fifth asserted causes of action.

### 4. *Sixth Cause of Action: Retaliation*

The sixth cause of action in Lungin's complaint is for retaliation in violation of section 12940, subdivision (h).

The three-step McDonnell Douglas burden shifting framework discussed above with respect to the discrimination claims in Lungin's second and third causes of action also applies to claims of retaliation. (See *Yanowitz, supra,* 36 Cal.4th at p. 1042.) Accordingly, to prove the claim, Lungin needed to establish the existence of an adverse employment action. (*Ibid.*)

In the context of retaliation claims, an adverse employment action is one that materially affects the conditions, or privileges of employment. (*Yanowitz, supra,* 36 Cal.4th at p. 1060.) "Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of [section 12940, subdivision (h).]" (*Id.* at pp. 1054–1055.)

As with her claims for discrimination, Lungin asserts she was denied a promotion to lead cashier based on her pregnancy and pregnancy related

accommodation requests.[6]  As with her discrimination claim, Lungin did not identify failure to promote prior to her response to the motion for summary judgment and, thus, cannot rely upon it now.  (See Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra,* 25 Cal.4th at p. 850; *Pierson, supra,* 4 Cal.App.5th at pp. 617–618; *Visueta, supra,* 234 Cal.App.3d at p. 1613; *D'Amico, supra,* 11 Cal.3d at p. 22.)

In addition, Lungin relies solely on her own testimony, and evidence to which the trial court sustained objections.  For the same reasons as discussed *ante*, Lungin has not presented prima facie evidence establishing she was qualified for the lead cashier position, that the individual that received the position was not more qualified, or that she was denied the opportunity to apply to the position at all, let alone based on her pregnancy or request for accommodation.

Accordingly, Lungin has not presented a triable issue of material fact with respect to her claim for retaliation.

> 5.  *Seventh Cause of Action:  Failure to Prevent Discrimination, Retaliation, and/or a Hostile Work Environment*

Lungin's seventh cause of action is for failure to prevent discrimination, retaliation, and/or a hostile work environment.  As we have already concluded Lungin did not establish a triable issue of material fact with respect to her discrimination, retaliation, and hostile work environment claims, the same conclusion necessarily follows with respect to this cause of action.  (See *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314.)

---

6    In the complaint, Lungin asserted she was wrongfully termination as a result of her request for accommodations but, as previously noted, she subsequently dismissed her wrongful termination claim.

6. *Lungin Has Not Demonstrated a Legally Cognizable Harm for Any Asserted Claim*

As a final matter, the trial court also concluded Lungin failed to demonstrate a legally cognizable harm with respect to each of the first seven causes of action. We agree.

In response to the motion for summary judgment, Lungin conceded she did not suffer any economic damage but alleged she did suffer emotional distress. However, as the trial court noted, Lungin testified the year after she resigned from Ulta was the happiest year of her life and admitted "she did not see a medical professional or take any medication for any alleged emotional distress that she attributes to Ulta, even though she saw a therapist for unrelated issues." Accordingly, the trial court concluded Lungin also could not establish a legally cognizable claim for damages based on emotional distress. Lungin does not address this separate basis for summary judgment in her briefing on appeal and we find no error in the trial court's conclusion.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.

28